Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 5334 | **DATE** | 9/24/2004 |
| **CASE TITLE** | LORILLARD TOBACCO CO. vs. HUMBOLDT PARK CITGO, INC. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Plaintiff Lorillard Tobacco Co.'s Motion for Summary Judgment on the Issue of Liability [doc. no. 17-1] is denied. The parties shall be prepared to set a date for the filing of the Final Pretrial Order and for trial at the next status hearing. Status hearing set for 10/6/04 at 9:30 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** |
| | Notices mailed by judge's staff. | | SEP 2 7 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 23 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| CG courtroom deputy's initials | | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LORILLARD TOBACCO CO., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Judge Ronald A. Guzmán |
| v. | ) | |
| | ) | No. 03 C 5334 |
| HUMBOLDT PARK CITGO, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

DOCKETED
SEP 2 7 2004

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff Lorillard Tobacco Co.'s Motion for Summary Judgment on the Issue of Liability. For the reasons that follow, Plaintiff's motion is denied.

## FACTS

Unless otherwise noted, the following facts are undisputed or are deemed admitted due to the parties' failure to comply with Local Rule 56.1, which this Court strictly enforces. Plaintiff Lorillard Tobacco Co. ("Lorillard") is a Delaware corporation with its principal place of business in Greensboro, North Carolina. (Pl.'s LR 56.1(a)(3) ¶ 1.) Defendant Humboldt Park Citgo, Inc. ("Humboldt Park") is an Illinois corporation with its principal place of business in Chicago, Illinois. (*Id.* ¶ 2.) Lorillard is the fourth largest tobacco company in the United States. (*Id.* ¶ 3.) All of Lorillard's cigarettes are manufactured in accordance with strict quality control standards. (*Id.*) Lorillard's leading brand is NEWPORT, which Lorillard has invested substantial time, effort, and money in advertising and promoting since the brand was first introduced to market in 1956. (*Id.* ¶ 4.) NEWPORT is the leading brand of menthol cigarettes sold in the United States and the second



leading cigarette brand overall, constituting approximately eight percent of the national market. (*Id.* ¶ 5.)

Lorillard and its affiliates have filed for and obtained federal trademark registrations for Lorillard's significant trademarks, including the marks NEWPORT® (Reg. No. 1,108,876), NEWPORT® (stylized) (Reg. No. 2,600,870), LORILLARD® (Reg. No. 1,920,066), Spinnaker Design® (Reg. No. 1,178,413), and NEWPORT and Design® (Reg. No. 1,191,816). (*Id.* ¶ 6.) All of these marks but Reg. No. 2,600,870 has reached incontestable status. (*Id.* ¶ 7.) Lorillard uses each of these five trademarks on each carton and pack of NEWPORT cigarettes, and some of these marks are used on the cardboard cases in which cartons of NEWPORT are shipped. (*Id.* ¶ 8.)

In a letter dated August 20, 2002, Lorillard warned all its retailers that counterfeit cigarettes were on the market. (*Id.* ¶ 10.) Lorillard sent a second letter dated April 10, 2003, which warned retailers to be suspicious of cigarettes sold at particularly low prices. (*Id.*) Since July 2003, Lorillard claims it has identified numerous establishments selling counterfeit NEWPORT cigarettes in the Chicago area. (*Id.* ¶ 9.)

Humboldt Park is a gas station/convenience store with daily sales of $5,000 to $6,000. (*Id.* ¶ 12.) Humboldt Park is managed by Shahid Shekha, who owns the business with his father Arif Shekha. (*Id.* ¶ 11.) Shahid Shekha is the only person that purchases cigarettes on behalf of Humboldt Park. (*Id.*) Humboldt Park sells between twenty and twenty-five cartons of cigarettes daily, approximately thirty-five percent of which are NEWPORT. (*Id.* ¶ 13.) Humboldt Park has purchased all of its NEWPORT cigarettes from Elston Wholesale for at least three years. (*Id.* ¶ 14; Def.'s LR 56.1(b)(3)(B) ¶ 24.) Elston Wholesale was approved by Lorillard as a legitimate

wholesaler from which Humboldt Park could obtain invoices in order to participate in Lorillard's promotional programs. (Def.'s LR 56.1(b)(3)(B) ¶ 25.)

Humboldt Park was in a NEWPORT promotion program in May and June 2003. (Pl.'s LR 56.1(a)(3) ¶ 15.) Humboldt Park produced Elston Wholesale invoices reflecting that it purchased approximately 240 cartons of NEWPORT Box cigarettes in April 2003, approximately 305 cartons in May 2003, approximately 195 cartons in June 2003, and approximately 185 cartons in August 2003. (*Id.* ¶¶ 16-18, 21.) Humboldt Park did not produce Elston Wholesale invoices for July 2003. (*Id.* ¶ 19.) Humboldt Park did produce Elston Wholesale's store receipts reflecting purchases of tobacco on July 15 and July 19, but these receipts do not itemize the brands of tobacco purchased. (Pl.'s LR 56.1(a)(3) Ex. 17.)

On July 29, 2003, Lorillard sales representative H. Silva visited Humboldt Park. (Pl.'s LR 56.1(a)(3) ¶ 22.) While at the store, Silva noticed twenty-eight cartons of cigarettes he suspected to be counterfeit. (*Id.*) He obtained one carton of the suspected counterfeit cigarettes.[1] (*Id.*) He sent the carton to Lorillard's corporate headquarters to determine whether they were indeed counterfeit. (*Id.*) On July 30, 2003, Robert Griffin, Lorillard's Director of Sales Planning, inspected the cigarettes obtained by Silva. (Pl.'s LR 56.1(a)(3) Ex. 20, Griffin Decl. ¶ 2.) Griffin states that, in his opinion, the packaging of the cigarettes obtained by Silva indicates they were counterfeit. (*Id.* ¶ 3.) Specifically, Griffin states that the tear tape of the cellophane wrapping is 3/16 inch long,

---

[1] Silva's original declaration states that he "purchased" the carton from the store. (Pl.'s LR 56.1(a)(3) Ex. 19, Silva Decl., ¶ 4.) In response, Humboldt Park argued that it has never sold a carton of cigarettes to anyone and that its cash register does not even allow a sale of a carton to be recorded. (Def.'s LR 56.1(b)(3)(B) ¶¶ 30-32.) Lorillard's reply attaches a new declaration from Silva stating that by the term "purchased," he meant that he "provid[ed] Humboldt Park with something of greater value – namely a genuine carton of Newport Box 80's." (Pl.'s Reply Mot. Summ. J., Ex. 1, Silva Decl. ¶ 4.)

instead of 5/16 inch long for genuine product; the method of printing on a genuine NEWPORT package results in a blurry quality on the side panel, and the cigarettes obtained by Silva lacked this blurry quality; and the cigarettes obtained by Silva had out-of-date product codes, which "are indicative of a counterfeit." (*Id.* ¶¶ 4-10.)

Lorillard's counsel obtained an *ex parte* seizure order on August 1, 2003, and the order was executed on August 2, 2003. (Pl.'s LR 56.1(a)(3) ¶ 23.) Pursuant to that order, Lorillard seized four full cartons of cigarettes, twenty-eight individual packs, and one open pack.[2] (*Id.*)

## DISCUSSION

The Court shall grant summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In deciding a motion for summary judgment, all facts must be viewed and all reasonable inferences drawn in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 (1970); *Shank v. William R. Hague, Inc.*, 192 F.3d 675, 683 (7th Cir. 1999). The Court must not weigh the evidence submitted by the parties or determine the truth of the matters asserted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). If a reasonable jury could find for the non-movant, summary judgment may not be granted. *Hedberg v. Ind. Bell Tel. Co., Inc.*, 47 F.3d 928, 931 (7th Cir. 1995); *see Anderson*, 477 U.S. at 248.

---

[2] Lorillard attaches to its reply brief a declaration of Ralph Jackson, the Division Manager for Lorillard in the Chicago area, in support of the proposition that the cartons and packs seized on August 1, 2003 were counterfeit. (*See* Pl.'s Reply Mot. Summ. J. Ex. 2, Jackson Decl. ¶¶ 5-11.) However, because this declaration was not included in Lorillard's LR 56.1 statement of facts, it will not be considered for the purposes of summary judgment.

4

As an initial matter, the Court emphasizes that this case is different from the usual summary judgment case in which the non-movant is the plaintiff. Because Lorillard is both the plaintiff and the movant, it bears the burden of offering proof of all of the elements of its claim demonstrating that it is entitled to judgment, whether or not the defendant offers proof to the contrary. *See Johnson v. Gudmundsson*, 35 F.3d 1104, 1112 (7th Cir. 1994) (quoting *Tobey v. Extel/JWP, Inc.*, 985 F.2d 330, 332 (7th Cir. 1993)) ("Even if the opposing party completely fails to respond to a summary judgment motion, Rule 56(e) permits judgment for the moving party only '*if appropriate*--that is, if the motion demonstrates that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law.'") (emphasis added in *Johnson*); *see also Hunt v. Cromartie*, 526 U.S. 541, 553 (1999) ("Summary judgment in favor of the party with the burden of persuasion . . . is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact.").

Lorillard brings this trademark infringement claim under the Lanham Act, which "protects registered marks . . . against fraud 'by the use of reproductions, copies, counterfeits, or colorable imitations of registered marks.'" *Packman v. Chi. Tribune Co.*, 267 F.3d 628, 638 (7th Cir. 2001) (quoting 15 U.S.C. § 1127); *see* 15 U.S.C. § 1114(1). In order to prevail on its claim, Lorillard must demonstrate that (1) its marks are protectable; and (2) Humboldt Park's use of the mark is likely to cause customer confusion. *See Packman*, 267 F.3d at 638.

There is no dispute that Lorillard's marks are protected. As to the element of customer confusion, the threshold issue is whether there is a genuine dispute that the cigarettes were in fact counterfeit. Lorillard offers the following evidence of counterfeit: (1) Silva's declaration that he observed what he believed were twenty-eight cartons of counterfeit cigarettes at Humboldt Park on

July 29, 2003; (2) Griffin's declaration that the carton Silva obtained on July 29, 2003 was counterfeit; (3) Humboldt Park's failure to produce invoices for July 2003, which, Lorillard argues, leads to the inference that Humboldt Park purchased cigarettes from someone other than Elston Wholesale in that month; and (4) Humboldt Park's failure to deny that it sold counterfeit cigarettes. Humboldt Park responds that it has never purchased cigarettes from anyone but Elston Wholesale, and it does not know why there were no receipts for the time period in question.

The Court concludes that Lorillard has not demonstrated that there is no disputed issue of material fact such that no reasonable jury could find the cigarettes were not counterfeit. First, Silva's suspicion that on July 29, 2003, there were twenty-eight counterfeit NEWPORT cartons at Humboldt Park is not conclusive proof of counterfeit. Silva has not established that he is an expert in determining the genuineness of the NEWPORT mark, and the fact that he sent the single carton to corporate headquarters for analysis leads to the contrary inference, that he is not competent to make that determination.

Second, Griffin's declaration does not conclusively establish that the carton sent to him by Silva was counterfeit. Griffin did not declare that Lorillard's manufacturing methods preclude the distribution of packs having tear tape width and quality of printing that fall outside the norm. *See Anderson*, 477 U.S. at 248 (citing *Adickes*, 398 U.S. at 158-59) (explaining that summary judgment is improper where the "moving parties' submissions had not foreclosed the possibility of the existence of certain facts" from which a jury could infer the existence of the non-movant's claims). In addition, the fact that the carton had an outdated (but once valid) product code, which Griffin declared was only "indicative" of counterfeit, does not mean that the carton was counterfeit as a matter of law. Moreover, while Griffin's declaration states that he "work[s] closely with Lorillard's

quality assurance programs" (Pl.'s LR 56.1(a)(3) Ex. 20, Griffin Decl. ¶ 1), Lorillard has failed to show that Griffin possesses knowledge of the process of manufacturing the NEWPORT packaging that would even allow him to testify to any degree of certainty as to whether, or how many, packages of NEWPORT may not meet manufacturing specifications. Finally, Griffin does not state he performed any chemical or other scientific analysis of the product itself. Indeed, it is impossible to determine from his declaration precisely what procedures Griffin utilized to determine whether the Silva carton was counterfeit. Thus, while Griffin's declaration may tend to support Lorillard's claim of counterfeit, finding that the Silva carton was indeed counterfeit would require the Court "to weigh the evidence and determine the truth of the matter," which is not the Court's function at the summary judgment stage. *See Anderson*, 477 U.S. at 249.

Finally, Lorillard's contention that the absence of invoices for July 2003 means that Humboldt Park "did not purchase NEWPORT Box cigarettes from Elston during July of 2003" is unavailing. (Pl.'s Mot. Summ. J. at 4.) This argument requires a strong inference in favor of Lorillard, and against Humboldt Park, which is wholly improper on a motion for summary judgment. *See Spiegla v. Hull*, 371 F.3d 928, 935 (7th Cir. 2004) (citing *Hines v. British Steel Corp.*, 907 F.2d 726, 728 (7th Cir.1990)) ("Summary judgment is inappropriate when alternate inferences can be drawn from the available evidence."). The lack of an invoice by itself does not mean that Humboldt Park did not purchase cigarettes from Elston Wholesale in July 2003, or that any cigarettes it did purchase (from Elston or anyone else) were counterfeit. Indeed, the Elston store receipts indicate that Humboldt Park did purchase some cigarettes from Elston in July, and this Court cannot conclude, as a matter of law, that none of those cigarettes were NEWPORT brand. Similarly, to read Humboldt Park's statement in its answer denying that it "knowingly [sold] counterfeit cigarettes,"

7

(Pl.'s LR 56.1(a)(3) Ex. 21, Answer & Countercl. ¶ 2), as an admission that it *did* sell counterfeit cigarettes would require an unreasonable and improper inference in favor of Lorillard.

Because Lorillard has not demonstrated that there is no genuine issue of material fact as to whether the cigarettes Humboldt Park sold and/or offered for sale were counterfeit, the Court need not address the parties' other arguments related to the intent to infringe. The Court therefore denies Lorillard's motion for summary judgment.

## CONCLUSION

For the foregoing reasons, Plaintiff Lorillard Tobacco Co.'s Motion for Summary Judgment on the Issue of Liability [doc. no. 17-1] is denied. The parties shall be prepared to set a date for the filing of the Final Pretrial Order and for trial at the next status hearing.

**SO ORDERED.**  ENTERED: 9/24/04

*[signature]*
HON. RONALD A. GUZMAN
**United States Judge**

8